BRETT A. SHUMATE
Assistant Attorney General, Civil Division
BILAL A. ESSAYLI
United States Attorney
DAVID M. HARRIS, AUSA
Chief, Civil Division
JACK D. ROSS, AUSA
Chief, Civil Fraud Section
FRANK D. KORTUM, AUSA
California Bar No. 110984
      Room 7516, Federal Building
      300 N. Los Angeles Street
      Los Angeles, California 90012
      Tel: (213) 894-6841    Fax: (213) 894-7819
      Email:  frank.kortum@usdoj.gov
JAMIE ANN YAVELBERG
ANDY J. MAO
      Attorneys, Civil Division
      United States Department of Justice
      175 N St. NE Room 10.139
      Washington, D.C. 20002
      Tel: (202) 598-7694   Fax: (202) 541-0280
      Email:  Andy.Mao@usdoj.gov
Attorneys for the United States of America

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES, *ex rel*. TRISHA KING, TENECA COSBY, and KRIS CEREZO, bringing this action on behalf of THE UNITED STATES OF AMERICA and THE STATE OF CALIFORNIA,<br><br>        Plaintiffs,<br><br>        v.<br><br>HARPER'S PHARMACY, INC., d/b/a AMERIPHARMA and ANDREW HARPER,<br>        Defendants. | No. SACV 19-01948 AH (ADSx)<br><br>STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA REGARDING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT<br><br>Hearing Date:  August 6, 2025<br>Time:          1:30 p.m.<br>Courtroom:    7D<br>Judge:        Hon Anne Hwang |

**I.      INTRODUCTION**

Although the United States did not intervene in this False Claims Act ("FCA") *qui tam* action, the United States nevertheless remains a real party in interest, entitled to share substantially in any recovery that a relator obtains.  *See* 31 U.S.C. § 3730(d); *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 934-35 (2009).  That interest extends to the Court's interpretation of the FCA, which is the United States' primary civil tool for fighting fraud.  The United States presents this Statement of Interest, under 28 U.S.C. § 517,[1] to address the following issues raised in Defendants' Motion to Dismiss (Dkt. 101):

A.      Whether the Court should accept Defendants' implicit assertions (1) that they are not liable for false statements submitted to entities such as Pharmacy Benefit Managers or Managed Care Organizations (rather than to the United States); and (2) that Relators have not adequately alleged materiality;

B.      Whether the Court should disregard any arguments Defendants may make regarding the effect of the United States' decision not to intervene in this action.

**II.     THE COURT SHOULD REJECT DEFENDANTS' ASSERTIONS REGARDING FALSITY AND MATERIALITY.**

While Defendants acknowledge that FCA liability attaches to a false claim for payment made to the government (Dkt. 101 at p. 14:17-18[2]), they assert that they cannot be liable for "underlying fraudulent activity."  *Id.* at p. 14:21.  Defendants argue that Relators have not properly alleged an underlying false claim or statement under the FCA, but this assertion is without merit in view of Relators' allegations that Defendants made false statements to entities such as Pharmacy Benefit Managers, Part D Sponsors,

---

[1] Section 517 authorizes the U.S. Attorney General to attend to the interest of the United States in any action in federal or state court.

[2]  Unless otherwise indicated, PACER pagination is used for page references to documents filed with this Court.

1

1  or Managed Care Organizations— and caused those entities to submit false claims to the

2  government that resulted in excessive reimbursements for prescription medications.

3  Second Amended Complaint ¶ 2 at p. 3:6-8; *see also id.* ¶¶ 36-38 at p. 11-12 (describing

4  claims submission and reimbursement process), ¶39 at p. 12 (noting that the United

5  States "shar[es] in any increase or decrease in the . . . actual costs of drug coverage . . .")

6  & 73 at p. 26 (noting that AmeriPharma agreed to "dispense the lowest cost dosage form

7  for formulary drugs . . .").[3]

8      Defendants also assert that Relators "have not adequately alleged materiality."

9  Dkt. 101 at p. 26:1-2.  But the courts have recognized that allegations by relators similar

10  to those set forth above, if proven, would materially affect the interests of the United

11  States.  For example, in *United States ex rel. Behnke v. CVS Caremark Corp.*, Civil

12  Action No. 14-cv-824, 2025 WL 1758623 (E.D. Pa. June 25, 2025), the court addressed

13  the issue of materiality under the FCA (*id.* at *27-28) and found it "highly implausible"

14  that the United States would "willingly subsidize" Part D prescription prices based on

15  underlying fraudulent activity.  *Id.* at *27.[4]  The court also noted that a Statement of

16  Interest filed by the United States identified the government's "strong interest in

17  ensuring that the Part D program does not pay inflated drug prices and that the

18  information that Plan Sponsors and their [Private Benefit Managers] report to CMS

19

20

21

22  [3]  In effect, Defendants are arguing that Relators have not properly alleged a
violation of the FCA in their Second Amended Complaint, which (as discussed in the
text accompanying this footnote) states that Pharmacy Benefit Managers or Managed

23  Care Organizations act as intermediaries in the payment process between the pharmacies
(that dispense drugs) and the federal programs that ultimately pay for individual

24  prescription claims (or otherwise subsidize the cost of the prescription drugs).  The Ninth
Circuit, however, has recognized that even a defendant that does not directly submit false

25  claims to the United States is liable if it caused others to submit the claims "with false
information."  *See generally United States v. Mackby*, 261 F.3d 821, 827-28 (9th Cir.

26  2021) (noting the "a person need not be the one who actually submitted the claim in
order to be liable" for "caus[ing] . . . claims to be submitted with false information.").

27  [4]  In *Behnke*, as here, the relator alleged that the defendants caused the submission

28  of false statements to the United States regarding drug pricing.  2025 WL 1758623 at
*30-31.

1  reflects the true costs of the program." *Id.*[5]  Similarly, the Ninth Circuit has generally

2  recognized that, "with regard to materiality, . . . the question is merely whether the false

3  certification . . . was relevant to the government's decision to confer a benefit."  *United*

4  *States ex rel. Rose v. Stevens Institute*, 909 F.3d 1012, 1019 (9th Cir. 2018).  The United

5  States respectfully suggests that this Court should recognize the same governmental

6  interests that the United States asserted in *Behnke*,[6]  and rule that Relators have

7  adequately alleged materiality.

8  **III.    THIS COURT SHOULD DISREGARD ANY ARGUMENTS**

9  **DEFENDANTS MAY MAKE REGARDING THE EFFECT OF THE**

10  **UNITED STATES' DECISION NOT TO INTERVENE IN THIS**

11  **ACTION**

12  Defendants assert that the United States and California declined to intervene "after

13  a thorough multi-year investigation."  Dkt. 101 at p. 9:4-6.  Defendants made a similar

14  assertion in their motion to dismiss the First Amended Complaint.  Dkt. 75 at p. 4

15  (asserting that "a multi-year joint federal/state investigation into the allegations in the

16  FAC could not unearth facts that would motivate the United States Department of Justice

17  or the California Attorney General's Office to intervene in this case and pursue the

18  claims alleged in the FAC.").  Defendants thus imply that the decision of the United

19

20  _____

     [5] The portion of the SOI that the *Behnke* court quoted also stated that "[w]hen

21  calculating its Part D payments, CMS relies on (and requires) accurate drug pricing information in Prescription Drug Event (PDE) records and in Direct and Indirect

22  Remuneration (DIR) reports."  *United States ex rel. Behnke v. CVS Caremark Corp.*, Civil Action No. 14-cv-824, Dkt. 312 at p. 2 (E.D. Pa. Oct. 27, 2023); *see also United*

23  *States ex rel. Ellsworth Assocs., LLP v. CVS Health Corp.*, 660 F.Supp.3d 381, 403-04 (E.D. Pa. 2023) (noting that "[t]he Government designed the Medicare Part D system to

24  decrease costs through market competition.  It did not envision a system where the Government's costs were purposefully increased by potential bad actors . . . who . . .

25  took steps at every level of the corporate Medicare reimbursement chain to profiteer at the Government's expense . . . .").

26       [6] On June 24, 2025, the United States filed a "Statement of Interest Regarding Materiality" in *Behnke*, noting the government's position that its decision not to

27  intervene does not "defeat materiality," as it is "a defendant's trial burden to prove a lack of materiality" based on the totality of evidence, including the specific information that

28  was available (or not) to the government at the time of the payment decision.  *See Behnke*, Dkt. 498 at p. 3 & 6.

1    States and California to decline intervention should be interpreted as an indication that

2    Relators' allegations are without merit.

3         For the reasons explained below, such an interpretation of the declination decision

4    is inappropriate and improper.[7]  Specifically, the decision of the United States not to

5    intervene in this case should have no bearing on the merits of Relators' allegations.  As

6    courts have recognized, there are myriad reasons why the government may decline to

7    intervene in an FCA action.  *See United States ex rel. Atkins v. McInteer*, 470 F.3d 1350,

8    1360 n.17 (11th Cir. 2006); *United States ex rel. Chandler v. Cook County, Ill.*, 277 F.3d

9    969, 974 n.5 (7th Cir. 2002).  Among the many reasons why the government may

10   decline to intervene include the government's belief that its resources would be better

11   expended elsewhere, and the government's determination that relators' counsel is well-

12   suited to litigate the matter successfully, without government assistance.  *See Chandler*,

13   277 F.3d at 974 n.5; *see also United States ex rel. Markus v. Aerojet Rocketdyne*

14   *Holdings, Inc.*, 381 F.Supp.3d 1240, 1248 (E.D. Cal. 2019) ("[T]here is no reason to

15   believe that the [government's] decision not to intervene is a comment on the merits of

16   this case.").

17        Any argument or implication that the Court should assume that the United States

18   looked unfavorably on this action, merely because of its decision not to intervene, is

19   "antithetical to [the text and] purpose of the *qui tam* provision" of the FCA, which

20   authorizes relators to litigate on behalf of the United States after declination.  *United*

21   *States ex rel. El-Amin v. George Washington Univ.*, 533 F.Supp. 2d 12, 21-22 (D.D.C.

22   2008) ("the simple fact that the government did not intervene has no probative value and

23   is not relevant"); *see also United States ex rel. Ormsby v. Sutter Health*, 444 F.Supp.3d

24   1010, 1077 (N.D. Cal. 2020) (suggesting that if a relator cannot proceed with non-

25   intervened claims, "there [would be] no recourse at all"—a result that would be

26

27         [7] The argument set forth below appears in a Statement of Interest that the United

28   States filed in this case on April 15, 2025 (Dkt. 83), and is repeated here for the
     convenience of the Court.

inconsistent with the purpose of the FCA's *qui tam* provisions); *accord Markus,* 381 F.Supp.3d at 1248.

It is noteworthy that the Supreme Court's watershed decision on FCA materiality—*Universal Health Services, Inc. v. United States ex rel. Escobar*, 579 U.S. 176 (2016)—was itself a declined case. Tellingly, the *Escobar* Court did not mention the declination decision as a factor in its materiality analysis. *See id.* at 189-196. Had the government's decision been tantamount to a conclusion (or even some possible evidence) that the violations alleged by the relator were immaterial to the relevant government payment decisions, the Court would not have needed to include its extensive discussion of fact-intensive factors bearing on a materiality analysis—a discussion that made no mention of the government's intervention decision. Unsurprisingly, on remand, the First Circuit likewise did not consider the declination to be relevant to the materiality inquiry. *United States ex rel. Escobar v. Universal Health Servs. Inc.*, 842 F.3d 103, 112 (1st Cir. 2016).

Since *Escobar*, other courts, particularly at the pleadings stage, have properly rejected defendants' invitations to draw negative materiality inferences from government decisions not to intervene in *qui tam* actions. *See, e.g., United States ex rel. Prather v. Brookdale Senior Living Communities, Inc.*, 892 F.3d 822, 836 (6th Cir. 2018) ("If relators' ability to plead sufficiently the element of materiality were stymied by the government's choice not to intervene, this would undermine the purposes of the Act.").

For the reasons explained above—and in the interests of furthering the purpose of Congress in authorizing FCA relators to continue *qui tam* actions and recover fraud-caused damages and related penalties on behalf of the government after declination—the

5

United States urges the Court not to give the government's declination decision any weight when assessing the sufficiency of Relators' pleadings.


Dated:  July 11, 2025                    Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
BILAL A. ESSAYLI
United States Attorney
DAVID M. HARRIS, AUSA
Chief, Civil Division
JACK D. ROSS, AUSA
Chief, Civil Fraud Section
JAMIE ANN YAVELBERG
ANDY J. MAO
Attorneys, Civil Division
United States Department of Justice

_____

FRANK D. KORTUM
Assistant United States Attorney
Attorneys for the United States of America

6