UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | 8:19-cv-01948-AH-(ADSx) | Date | August 12, 2025 |
| Title | United States of America and the State of California, ex rel. Trisha King and Teneca Cosby v. Harper's Pharmacy, Inc., et al. | | |

Present: The Honorable   Anne Hwang, United States District Judge

| Yolanda Skipper | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** (IN CHAMBERS) ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS (DKT. NO. 101)

Before the Court is Defendants Harper's Pharmacy's (d/b/a/ "AmeriPharma") and its founder Andrew Harper's ("Harper") (collectively "Defendants") Motion to Dismiss Relators Trisha King's, Teneca Cosby's, and Kris Cerezo's (collectively "Relators") Second Amended Complaint ("SAC"). Relators oppose. Opp'n, Dkt. No. 105. Defendants filed a Reply. Reply, Dkt. No. 107. The United States and the State of California also filed Statements of Interest. Dkt. Nos. 104, 106. The matter is fully briefed, and the Court heard oral argument on August 6, 2025. For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion.

I.  **BACKGROUND**

This is an action to recover damages and civil penalties on behalf of the United States and the State of California for violations of the federal False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.*, and the California False Claims Act ("California FCA"), California Government Code § 12650, *et seq.* SAC ¶ 1, Dkt. No. 97. Relators are ex-pharmacy technicians who separated from AmeriPharma

about more than five years ago. *Id.* ¶¶ 84–86. AmeriPharma is a privately held pharmacy founded by Harper, who continues to control the business, serving as its owner, President, and Chief Executive Officer. *Id.* ¶ 87. AmeriPharma's patient population is among the most vulnerable. *Id.* ¶ 111. AmeriPharma serves nearly 400 nursing homes and other long-term care facilities in California, with a total elderly population exceeding 5,000 residents. *Id.*

Relators allege that Defendants have violated the FCA and California FCA through five fraudulent schemes:

- **Scheme 1: Substitution of Medications** – The illegal and inappropriate disregard and changing of prescriber's orders regarding the form of drug to be dispensed in order to submit and receive higher reimbursements for a different form of the same drug, and based on the untruthful representation that the originally prescribed drug was not covered by the patient's insurance;
- **Scheme 2: Inappropriate Billing** – The illegal and inappropriate billing for one drug but dispensing of another brand or formulation of that drug that is less expensive for Defendants to acquire;
- **Scheme 3: Unauthorized Refills** – The illegal and unauthorized refilling of prescriptions when no refills had been authorized by the prescriber, or when authorized refills had been exhausted, and then delaying billing or otherwise submitting fraudulently supported bills to government payors;
- **Scheme 4: Kickbacks** – The illegal and unauthorized payment of kickbacks to AmeriPharma's customers to secure and maintain their business; and
- **Scheme 5: Reselling of Branded Drugs and Recordkeeping Violations** – Reselling returned branded drugs without complying with recordkeeping requirements and, in many instances, failing to credit government payors and double-billing government payors for drugs that they had already purchased.

*Id.* ¶ 1.

As a result of these schemes, Relators allege that Defendants submitted false and/or fraudulent claims to Medicare, Medicaid, and TRICARE. *Id.* ¶ 2.

On October 11, 2019, Relators filed the initial Complaint. Dkt. No. 1. Relators then filed their First Amended Complaint on May 22, 2020. Dkt. No. 13. On September 19, 2024, the United States and the State of California declined to

intervene, Dkt. No. 54, and the case was unsealed. Dkt. No. 55. On May 30, 2025, Relators filed their SAC. Dkt. No. 97. Defendants have now filed this Motion to Dismiss the SAC. Mot. to Dismiss, Dkt. No. 101.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of a "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). A dismissal under a 12(b)(6) motion can be based on either a "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotation marks and citation omitted). On a 12(b)(6) motion, courts accept as true all well-pleaded allegations of material fact and construe them in a light most favorable to the non-moving party. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030–31 (9th Cir. 2008). To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not" suffice. *Id.* (internal quotation marks and citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555.

Moreover, Federal Rule of Civil Procedure 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Id.* (cleaned up).

FCA claims must also satisfy Federal Rule of Civil Procedure 9(b). *Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011). Rule 9(b) requires plaintiffs to plead the circumstances constituting fraud with particularity. Fed. R. Civ. P. 9(b). To adequately plead fraud with particularity, a party must identify "the who, what, when, where, and how of the misconduct charged." *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (internal quotation marks and citation omitted).

### III. DISCUSSION

Relators allege four claims for relief under four statutory provisions in the FCA and California FCA: (1) presentation of a false or fraudulent claim under 31 U.S.C. § 3729(a)(1)(A); (2) making or using a false statement material to a false or fraudulent claim under 31 U.S.C. § 3729(a)(1)(B); (3) presentation of a false or fraudulent claim under California Government Code § 12651(a)(1); and (4) making or using a false statement material to a false or fraudulent claim under California Government Code § 12651(a)(2). *See generally* SAC.

"The False Claims Act makes liable anyone who 'knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval,' or 'knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim.'" *United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 898–99 (9th Cir. 2017) (quoting 31 U.S.C. § 3729(a)(1)(A), (B)). "[A] successful False Claims Act claim requires: (1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *United States ex rel. Rose v. Stephens Institute*, 909 F.3d 1012, 1017 (9th Cir. 2018) (internal quotation marks and citation omitted). "A 'claim' includes direct requests for government payment as well as reimbursement requests made to the recipients of federal funds under a federal benefits program." *Campie*, 862 F.3d at 899 (citing 31 U.S.C. § 3729(b)(2)(A); *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 181–82 (2016)).

"It is not enough to allege regulatory violations; rather, the false claim or statement must be the *sine qua non* of receipt of state funding." *Id.* (cleaned up). The FCA is construed broadly, "as it is intended to reach all types of fraud, without qualification, that might result in financial loss to the Government." *Id.* (cleaned up). "The FCA attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the claim for payment." *Cafasso*, 637 F.3d at 1055 (cleaned up). And where "the statutory provisions of the federal FCA and California FCA are the same, courts apply the same analysis to federal and California FCA claims." *United States v. Safran Grp.*, 2017 WL 235197, at *4 (N.D. Cal. Jan. 19, 2017) (citing *Fassberg Constr. Co. v. Hous. Auth. of City of Los Angeles*, 152 Cal.App.4th 720, 735 (2007); *Stoner v. Santa Clara Cnty. Off. of Educ.*, 400 F.App'x 185, 186 (9th Cir. Oct. 18, 2010)).

Defendants make three arguments in their Motion to Dismiss. *See generally* Mot. to Dismiss. First, Defendants argue that Relators fail to state a claim for relief under Rules 8 and 12(b)(6) because Relators do not adequately allege falsity. *Id.* at 8–19. Second, Defendants argue that Relators fail to state a claim for relief under Rule 12(b)(6) because Relators have not adequately alleged materiality. *Id.* at 20–21. Lastly, Defendants argue that Relators have failed to plead FCA violations with the sufficient particularity required under Rule 9(b). *Id.* at 21–25.[1]

### A. Relators Do Not Sufficiently Allege Falsity Under Schemes 1, 3, and 5 But Do Sufficiently Allege Falsity Under Scheme 2

To establish falsity under the FCA, a relator can either allege that a defendant submitted claims that were factually false or legally false. *See United States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 675–76 (9th Cir. 2018). "A factually false claim is one in which the claim for payment is itself literally false or fraudulent, such as when the claim involves an incorrect description of goods or services provided or a request for reimbursement for goods or services never provided." *Id.* at 675 (cleaned up).

There are two theories of legal falsity: express false certification and implied false certification. *See Ebeid*, 616 F.3d at 998. "Express false certification involves an entity's representation of compliance with the law as part of the process for submitting a claim when it is actually not compliant." *Silingo*, 904 F.3d at 675–76 (citing *id.*).

Prior to the Supreme Court's decision in *Escobar*, the Ninth Circuit approved an implied false certification claim occurring "when an entity has

---

[1] Defendants request that the Court take judicial notice of the Sample Form CMS-1500 ("Health Insurance Claim Form") and the Medi-Cal Pharmacy Claim Form 30-1. Defs.' RJN, Dkt. No. 102. "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Here, Defendants argue that both of the documents are incorporated by reference in the SAC and are central to the Relators' claims. Defs.' RJN at 1. Relators do not dispute this. Accordingly, the Court takes judicial notice of both forms for purposes of this Motion.

previously undertaken to expressly comply with a law, rule, or regulation, and that obligation is implicated by submitting a claim for payment even though a certification of compliance is not required in the process of submitting the claim." *Ebeid*, 616 F.3d at 998.  The Second, Sixth, Tenth, and Eleventh Circuits had similarly endorsed this implied false certification theory.  *Id*. at 996.  The Ninth Circuit held that "[t]o survive a Rule 9(b) motion to dismiss, a complaint alleging implied false certification must plead with particularity allegations that provide a reasonable basis to infer that (1) the defendant explicitly undertook to comply with a law, rule or regulation that is implicated in submitting a claim for payment and that (2) claims were submitted (3) even though the defendant was not in compliance with that law, rule or regulation."  *Id*. at 998.

Several years later, the Supreme Court in *Escobar* addressed the viability of an implied false certification claim, noting a circuit split.  579 U.S. at 185–86.  *Escobar* discussed several different theories of implied false certification.  While the parties disputed whether "submitting a claim without disclosing violations of statutory, regulatory, or contractual requirements constitutes such an actionable misrepresentation[,]" the Supreme Court concluded that it "need not resolve whether all claims for payment implicitly represent that the billing party is legally entitled to payment."  *Id*. at 188.  That is because in *Escobar*, the claims did "more than merely demand payment"; they "f[ell] squarely within the rule that half-truths—representations that state the truth only so far as it goes, while omitting critical qualifying information—can be actionable misrepresentations."  *Id*. (footnote omitted).  Thus, the Supreme Court held that implied false certification requires that "first, the claim does not merely request payment, but also makes specific representations about the goods or services provided; and second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths."  *Id*. at 190 (footnote omitted).  "By punishing defendants who submit 'false or fraudulent claims,' the False Claims Act encompasses claims that make fraudulent misrepresentations, which include certain misleading omissions."  *Id*. at 186–87.  "When, as here, a defendant makes representations in submitting a claim but omits its violations of statutory, regulatory, or contractual requirements, those omissions can be a basis for liability if they render the defendant's representations misleading with respect to the goods or services provided."  *Id*. at 187.

The Ninth Circuit has since clarified that *Escobar*'s two conditions are mandatory for *any* implied false certification claim, rather than "the lower standard

for falsity enunciated in *Ebeid*." *Rose*, 909 F.3d at 1018.[2]  Although *Escobar* did not expressly disavow a theory of implied false certification that "'occurs when an entity has *previously* undertaken to expressly comply with a law, rule, or regulation [but does not], and that obligation is implicated by submitting a claim for payment even though a certification of compliance is not required in the process of submitting the claim[,]'" *id*. at 1017 (quoting *Ebeid*, 616 F.3d at 998) (emphasis and alteration in original), by rejecting *Ebeid*'s test, the Ninth Circuit appears to have foreclosed such a claim.  Indeed, *Escobar*'s test requires that the claim "not merely request payment[.]"  579 U.S. at 190.  Rather, implied false certification claims require allegations of "specific representations about the goods or services provided[.]"  *Id*.[3]

### 1. Scheme 1

For Scheme 1, Relators allege that AmeriPharma would identify where one form of a drug was reimbursed at a greater amount than another and would submit a change order for prescriptions that falsely represented to the prescriber that the prescribed form of the drug was not on the formulary for the patient's insurance, even though Defendants knew the assertion was untrue.  SAC ¶ 92.  The doctor would then assent to the change, believing in AmeriPharma's false representation.  *Id*.  AmeriPharma then would dispense the drug, submit a claim, and get reimbursed for the more expensive drug, leaving government payors to pay the higher price.  *Id*.

---

[2] Prior to *Rose*, several district courts had concluded that *Escobar* "did not establish a rigid two-part test for falsity that must be met [in] every single implied certification case," relying on *Escobar*'s language that FCA liability attaches "at least where two conditions are satisfied."  *Rose v. Stephens Instit*., 2016 WL 5076214, at *5 (N.D. Cal. Sept. 20, 2016) (cleaned up).

[3] In an unpublished case, the Ninth Circuit subsequently confirmed that a complaint must allege specific representations.  *McElligott v. McKesson Corp*., 2022 WL 728903, *1 (9th Cir. Mar. 10, 2022) ("As far as the complaint reveals, McKesson represented nothing more in its claims for payment than that it delivered certain medical supplies on certain dates.  The complaint does not allege that those representations were false, and McKesson's failure to disclose that the supplies were delivered through a noncompliant supply chain did not render misleading the representation that the supplies were delivered.").

Relators allege that AmeriPharma's drug changing scheme is completely unnecessary from a medical perspective, is sometimes harmful or dangerous, and is done purely for profit. *Id.* ¶ 95. For some drugs, the cost increases for patients when moving from one form of the drug to the other. *Id.* ¶¶ 99, 100. This scheme violates Defendants' Provider Agreement with CVS Caremark as well as Caremark's Provider Manual. *Id.* ¶¶ 72, 73, 128. This scheme also violates various laws and regulations, including the California Business and Professions Code. *Id.* ¶¶ 102, 104, 106, 107. Violations of these California Board of Pharmacy laws and regulations cause AmeriPharma's certifications that they were in compliance with all applicable federal, state and local laws, along with rules and regulations, to be materially false. *Id.* ¶ 108.

At the hearing on this Motion, however, Relators clarified that this Scheme[4] is based on the submission of claims to Pharmacy Benefit Managers, such as Caremark, which are submitted by entering thirty-seven fields of data in a record called a Prescription Drug Event ("PDE") and which, critically, do not contain any required representation or certification that the claim is based on a valid prescription.[5] Rather, Relators clarified at the hearing that the falsity alleged with Scheme 1 is that every time a claim was submitted, it was implicit that Defendants were representing they were in compliance with the Provider Agreement, the Provider Manual, and all applicable laws and regulations. Defendants' conduct was in breach of contractual, statutory, and regulatory obligations, and therefore, Relators argue, the submission of the claim itself was an implied false certification that the drugs were dispensed based on a valid prescription. Relators expressly acknowledged at the hearing that there was no specific representation within the claim, i.e., the submission of PDE data, upon which this theory of falsity relies, but rather that what is implied is an implicit certification of compliance "every time they hit the send button."[6]

---

[4] The same analysis applies to Schemes 3 and 5.

[5] The SAC, however, alleges that the claim does "expressly" represent that the drug for which reimbursement is being requested was dispensed upon a valid prescription, SAC ¶¶ 37, 38, but Relators clarified at the hearing that this representation is implied, not expressly made, based on the mere submission of the claim.

[6] Prior to the hearing, the Court circulated a tentative ruling analyzing what appeared to be the theory of this scheme, namely that there was a misrepresentation about the medical necessity of the prescriptions, and the misleading "half-truth" was that Defendants lied to prescribers about the form of

Here, the claims submitted were alleged to be factually true even though the underlying documents to support the claim were false, and therefore Relators have not sufficiently alleged a theory of factual falsity. Moreover, Relators do not point to any specific express false certification of compliance with the law, and therefore Relators have not sufficiently alleged an express certification theory of legal falsity. Finally, Relators confirmed at the hearing that they were relying on a theory of implied false certification that although the claim merely requested payment, and no specific representation was made about the goods or services within the claim (as opposed to a prior representation in the Pharmacy Agreement), a representation about compliance with all contracts and laws was implicit in the submission of a claim. As discussed above, while this may have been sufficient under *Ebeid*, the Ninth Circuit appears to now require more.[7]

---

medication available in order to get prescribers to change the prescription, in some circumstances to medication that was harmful or dangerous, and therefore not medically necessary. As to these allegations, the Court finds generally that they would sufficiently state a claim of implied false certification because the allegation is regarding a specific misrepresentation about medical necessity, although the Court does agree with Defendants that such a claim now lacks sufficient specificity about the particular specific representation, given Relators' arguments at the hearing that the PDE data contains no certifications. In any event, Relators appeared to disavow such a theory during argument on the Motion.

[7] District courts in this district similarly recognize that an implied false certification theory based on the submission of a claim is now foreclosed in the Ninth Circuit. *See, e.g., United States ex rel. Lewis v. Cal. Instit. of Tech.*, 2019 WL 5595046 (C.D. Cal. Oct. 28, 2019); *United States ex rel. Mateski v. Raytheon Co.*, 2017 WL 1954942 (C.D. Cal. Feb. 10, 2017) (a pre-*Rose* case analyzing *United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325 (9th Cir. 2017)). Relators rely heavily on an out-of-circuit district court case, *Bassan*. *United States ex rel. Bassan v. Omnicare, Inc.*, 2021 WL 1063784 (S.D.N.Y. Mar. 19, 2021). That case involved Omnicare's dispensing of prescription drugs without a valid prescription and submission of claims for reimbursement to several federal healthcare programs. In that case, the government alleged that defendants' claims to Medicare and Medicaid were expressly false because "those claims require applicants to certify that the dispensations for which they were seeking reimbursement were made in compliance with federal law." *Id.* at *8. Relators do not make similar allegations here. Moreover, although the government there also alleged that the defendants' claims were impliedly false because Omnicare submitted claims without disclosing that the dispensation was made without a valid prescription, *id.*, the district court

Accordingly, Relators fail to sufficiently plead falsity under Scheme 1.[8]

### 2. Scheme 2

Scheme 2 alleges a theory of factual falsity. Under Scheme 2, Relators allege that AmeriPharma dispensed a cheaper drug while billing for a different, more expensive and more highly reimbursed drug. SAC ¶ 167. In order to perpetrate this scheme, Relators allege that Defendants directed AmeriPharma's pharmacists and/or pharmacy technicians to dispense an inexpensive "alternative" to a prescribed drug to the patient, but then placed an "Rx tickler" in their electronic system stating "ALT NDC," meaning that the payor should be billed for an alternate drug code that would reimburse an amount higher than the drug dispensed. *Id.* ¶ 168 (internal quotation marks omitted). Relators then attach Exhibit 15 to the SAC, which is a copy of several screenshots from AmeriPharma's pharmacy management software showing patient prescriptions that were dispensed and billed under an ALT NDC. *Id.* ¶ 172; SAC Ex. 15, Dkt. No. 97-15.

Exhibit 15 is entitled "Tickler Scan" and are screenshots of AmeriPharma records. SAC Ex. 15. Exhibit 15 includes Rx Numbers, the time and date due, and date and time entered for patient prescriptions. *Id.* It also includes the "ALT NDC" notation. *Id.* Relators argue that Exhibit 15 "shows several examples of where AmeriPharma dispensed one drug but did not bill for that drug." SAC ¶ 172. Relators further argue that the ALT NDC notation indicated that the payor

---

did not address an argument regarding *Escobar*'s requirement of a specific representation. Rather, the defendant argued that the relevant regulation was not yet in effect at the time. *Id*. at *8–*9. Defendants here also rely heavily on an out-of-circuit district court case, *Lisitza*, but that case is distinguishable on a number of grounds. *United States ex rel. Lisitza v. Par Pharm. Cos., Inc.*, 276 F.Supp.3d 779 (N.D. Ill. 2017). Significantly, prior to *Escobar*, the Seventh Circuit had rejected the implied false certification theory approved by the Ninth Circuit (in *Ebeid*). Accordingly, no question was raised there regarding an implied certification theory of liability based on a prior certification untethered to any submitted claim.
[8] The Statements of Interest filed by the United States and the State of California do not address Defendants' argument regarding *Escobar*. *See* Dkt. Nos. 104, 106. As to falsity, the United States argues merely that Defendants are liable even if they do not directly submit false claims to the United States. Dkt. No. 104 at 1–2. The Court agrees.

should be billed for an alternate national drug code that would reimburse an amount higher than the drug dispensed. *Id.* ¶ 168.

Defendants argue that Relators' allegations are conclusory and based on unreasonable inferences. Mot. to Dismiss at 10. However, Exhibit 15, coupled with these allegations in the SAC that Defendants directed pharmacists and technicians to dispense the cheaper alternative of a drug using the "ALT NDC" marker, are enough to allege that a claim for payment to Pharmacy Benefit Mangers ("PBM"), such as Caremark, is itself literally false or fraudulent, as it is done to overcharge government payors. *See United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1170 (9th Cir. 2006) ("[i]n an archetypal *qui tam* False Claims action, such as where a private company overcharges under a government contract, the claim for payment is itself literally false or fraudulent").

Defendants also argue that the allegations do not eliminate obvious alternative explanations besides fraudulently billing at a higher price, such as because the drug prescribed was discontinued. Mot. to Dismiss at 11 n.7. However, "[i]f there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Thus, Relators sufficiently allege a theory of factual falsity under Scheme 2.

### 3. <u>Scheme 3</u>

Scheme 3 alleges a theory of legal falsity based on implied false certification. As part of Scheme 3, prescriptions were refilled when prescriber authorization for refills had not been obtained, but insurers were billed for reimbursements regardless. SAC ¶ 184. Relators allege that AmeriPharma's pharmacy management system, called QS/1, was used to facilitate this fraudulent refill scheme. *Id.* ¶ 185. Similar to Scheme 1, this claim alleges that the implied falsity was that there was a valid prescription when the claim was submitted. For the same reasons discussed above, Relators fail to sufficiently allege falsity.[9]

---

[9] To the extent Relators allege a theory of factual falsity, such as that "the drug's supposed prescriber, the number of refills allowed, and other assorted information … were wholly untrue because there was no underlying prescription at all to support the reimbursement[,]" *Bassan*, 2021 WL 1063784, at *10, Relators will

    **4.**    <u>Scheme 5</u>

Scheme 5 alleges a theory of legal falsity based on implied false certification. As part of Scheme 5, Defendants repurposed and resold unused branded drugs by long-term care facilities. SAC ¶ 220. Relators allege that the drugs were charged to government payors, in many instances, without providing credit to the government payor, resold, and double-billed to government payors. *Id.* Relators allege that with respect to the unused medications at long-term care facilities, the Provider Manual mandated that providers were required to credit Caremark for unused medications, such as the unused drugs that were returned from nursing homes and long-term care facilities when a patient left the facility. *Id.* ¶ 223. Similar to Scheme 1, this claim alleges that the implied falsity was that there was a valid prescription when the claim was submitted. For the same reasons discussed above, Relators fail to sufficiently allege falsity.

    **B.**    **Relators Sufficiently Allege Violations of the Anti-Kickback Statute (Scheme 4)**

Relators allege that Scheme 4 resulted in a violation of the Anti-Kickback Statute ("AKS").

"[A] claim that includes items or services resulting from a violation of [the AKS] constitutes a false or fraudulent claim for the purposes of [the FCA]."[10] 42 U.S.C. § 1320a-7b(g). An AKS violation requires that the defendant: (1) knowingly and willfully (2) offer or pay any remuneration (3) to induce the purchase or ordering of products or services for which payment may be made under a federal healthcare program. *Id.* § 1320a-7b(b)(2)(B).

Regarding Scheme 4, the SAC alleges that AmeriPharma provided "kickbacks to AmeriPharma customers in order to induce those customers to begin and/or continue to do business with AmeriPharma." SAC ¶ 206. AmeriPharma had a policy and practice of providing items of value at no charge to long-term care facility customers to induce the referral of prescription drug services paid for under federal health programs. *Id.* ¶ 207. These items of value included printers,

---

need to allege that theory more clearly and with specificity in any amended complaint.

[10] At the hearing on this Motion, Relators used as an example a violation of the AKS to demonstrate that the misrepresentation need not be made in the claim itself. However, the difference here is based on a specific statutory provision.

scanners, fax machines, blood pressure machines, and Cubex medication dispensers. *Id.* The SAC further alleges that AmeriPharma demanded the return of gifted equipment upon the termination of their relationship, which is alleged to demonstrate that but for the kickbacks, claims for prescriptions for patients at those customer facilities would not have been made. *Id.* ¶ 219.

Defendants argue that Relators fail to link this alleged kickback scheme to any claims for payment. Mot. to Dismiss at 18. Defendants argue that the SAC does not allege violations of the AKS resulted in any "false or fraudulent claims" to the government. *Id.* (internal quotation marks omitted).

The Court finds that Relators have sufficiently alleged a causal link. Here, Relators allege that remunerations were given to induce potential customers to refer prescription drug services for which payment would be made under government programs, and further allege that the demand for return of the items upon termination of the relationship demonstrate that the items were inducements for the referral.[11] The Court finds the allegations sufficient at this motion to dismiss stage. *See, e.g.*, *United States v. Medtronic PLC*, 2024 WL 1363644, at *6 (C.D. Cal. Mar. 28, 2024) (finding that "actual inducement is not a requirement of the AKS—that remuneration was given '*to induce*' is sufficient for a violation of the AKS" and that "[e]ven if no Subject Devices were bought because of the inducement, it would be a violation of the AKS if Defendants gave renumeration [sic] *to induce*") (emphasis in original); *United States v. TEVA Pharms. USA, Inc.*, 2016 WL 750720, at *17 (S.D.N.Y. Feb. 22, 2016) (finding that the "focus of the AKS is not the success of the bribe, but the bribe itself" and that a relator only needs to show that "one purpose of remuneration is to induce a person to use a service for which payment is made under a federal healthcare program") (citing *United States v. Kats*, 871 F.2d 105, 108 (9th Cir. 1989)) (cleaned up).

Thus, Relators sufficiently allege a violation of the AKS under Scheme 4.

---

[11] Defendants argue that these allegations show "at best, 'merely' a 'temporal relationship[.]'" Reply at 10. However, seeking return of items that are alleged to be unrelated to the nature of the business is more than "temporal," but rather shows a causal relationship. The items alleged are not alleged to have been "supplied under the contract," or "integrally related to the specific pharmacy services AmeriPharma provided to Part A LTC customers," *id.* (cleaned up), but include printers, scanners, fax machines, toner, among other things. SAC ¶¶ 207–13.

### C. Relators Sufficiently Allege Materiality for Schemes 2 and 4

"Under the False Claims Act, the term material means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." *Rose*, 909 F.3d at 1018 (internal quotation marks and citation omitted). "In *Escobar*, the Supreme Court elaborated on what can and cannot establish materiality in the context of the False Claims Act. The Court clarified that whether a provision is labeled a condition of payment is relevant to but not dispositive of the materiality inquiry." *Id*. at 1019 (cleaned up). *Rose* further added that:

> The Supreme Court then laid out three scenarios that may help courts determine the likely or actual behavior of the government with regard to a given requirement. First, proof of materiality can include, but is not necessarily limited to, evidence that the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement. Second, the Court explained that, if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material. Third, if the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material.

*Id*. (cleaned up).

Defendants argue that Relators fail to sufficiently allege materiality with particularity because they do not allege whether payment was conditioned on compliance and fail to address the magnitude of each of the alleged violations. Mot. to Dismiss at 20.

The SAC alleges that government payors would not have paid the claims had they known of the alleged falsity in each scheme, particularly in light of the nature of the alleged falsity in each scheme, and that the federal government has intervened and settled cases involving analogous schemes. SAC ¶¶ 232, 235.

The Court finds that Relators have sufficiently pled materiality as to Schemes 2 and 4.

### D. Relators Satisfy the Particularity Requirements of Rule 9(b) for Schemes 2 and 4

"Rule 9(b) requires a party to state with particularity the circumstances constituting fraud or mistake, including the who, what, when, where, and how of the misconduct charged." *Ebeid*, 616 F.3d at 998 (internal quotation marks and citation omitted). Rule 9(b) does not "require a relator to identify representative examples of false claims to support every allegation[.]" *Id.* "[U]se of representative examples is simply one means of meeting the pleading obligation." *Id.* "It is sufficient to allege particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Id.* at 998–99 (cleaned up). "The Rule 9(b) standard may be satisfied by pleading with particularity a reasonable basis to infer that the government either paid money or forfeited moneys due." *Id.* at 999 n.4.

Here, the SAC alleges Schemes 2 and 4 with the requisite particularity required under Rule 9(b). Regarding these schemes, Relators allege the particular details of how these schemes took place with sufficient indicia leading to an inference that claims were submitted. *See* SAC ¶¶ 167–71, 206–19.

Accordingly, the Court finds that Relators' allegations survive under a heightened Rule 9(b) standard.

Leave to amend a dismissed complaint should be granted unless it is clear the complaint cannot be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek*, 519 F.3d at 1031. A "district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011). Otherwise, leave to amend shall be "freely give[n]…when justice so requires." Fed. R. Civ. P. 15(a)(2). Thus, the Court grants Relators leave to amend the SAC.

### IV. CONCLUSION

Accordingly, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss. Any amended complaint shall be filed and served within thirty (30) days.

**IT IS SO ORDERED.**